UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JEREMY SONNIER                    *    CIVIL ACTION
                                  *
VERSUS                            *    NO. 08-4800
                                  *
DR. JOHN CRAIN, ET AL             *    SECTION "B"(4)

ORDER AND REASONS

Before the Court is Plaintiff's Motion to Stay Proceedings pursuant to FED. R. CIV. P. 62 (c) in response to this Court's order denying a preliminary injunction and Plaintiff's subsequent appeal of that interlocutory order to the Fifth Circuit. (Rec. Doc. 21). Also before the Court is Defendant's Motion for Judgment on the Pleadings pursuant to FED. R. CIV. P. 12(c). (Rec. Doc. 26). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Plaintiff's Motion to Stay Proceedings is **DENIED**, Defendant's Motion for Judgment on the Pleadings to dismiss Defendants McHodgkins and Carmichael in their official capacity is **DENIED**, and Defendant's Motion for Judgment on the Pleadings to dismiss Defendants McHodgkins and Carmichael in their personal capacities is **GRANTED**.

*BACKGROUND*

Plaintiff Jeremy Sonnier originally filed this civil rights action under 42 U.S.C. §§ 1983 and 1988 on November 4, 2008 against Dr. John Crain, in his official capacity as Interim

1

President of Southeastern Louisiana University ("SLU"), Jim McHodgkins, individually and in his official capacity as Assistant Vice President for Student Affairs of SLU, and Thomas Carmichael, individually and in his official capacity as a SLU police officer. (Rec. Doc. 1). Plaintiff alleges that the SLU Policy on Public Speech, Assembly, and Demonstrations ("speech policy") violates his First Amendment right to free speech and expression, and seeks injunctive and declaratory relief, as well as nominal damages. *Id.*

The SLU speech policy requires any individual or organization seeking to assemble or demonstrate on campus to submit an application seven (7) days in advance of the desired assembly or demonstration. *Id.* The speech policy also provides that the speech and assembly activity of any group is limited to one two-hour time frame per seven-day period on campus areas specifically designated for speech activities. *Id.* Although Students may assemble and demonstrate on these grounds without prior administrative approval, outside individuals or organizations wishing to use such areas must "register" the public speech or assembly a minimum of seven days in advance. *Id.* The application must then be submitted and approved by the Assistant Vice President of Student Affairs in order to hold an assembly or demonstration on the SLU campus.

Plaintiff is a traveling evangelist who visits university

2

campuses to engage college students in dialogue about the teachings of Christianity. *Id.* On November 19, 2007 Plaintiff, along with a few others,[1] visited the SLU campus with the purpose of "expressing his Christian message to students." *Id.* Plaintiff held up a sign, attempted to speak to students in the vicinity, and was approached by Defendant Carmichael, a SLU police officer. *Id*. Officer Carmichael allegedly informed Plaintiff of the speech policy, stated that there had been complaints related to his activity, and asserted that continuing his speech would be considered "disruptive". *Id.*

Plaintiff also claims that Officer Carmichael demanded him and the others to produce identification and discontinue all expressive activity until administrative permission was obtained. *Id*. Plaintiff and Officer Carmichael proceeded to the office of Defendant Jim McHodgkins, the Assistant Vice President for Student Affairs, where McHodgkins again informed Plaintiff of the speech policy and "backed" Officer Carmichael's actions. *Id*. McHodgkins informed Plaintiff that he would not be able to obtain permission to speak on campus that day, and Plaintiff and the others subsequently left the campus. *Id*.

---

Defendant's counsel stated during the hearing on the Motion for Preliminary Injunction that according to both the Plaintiff's attorney and the police report there were four individuals with Plaintiff at the SLU campus on November 19, 2007. (Rec. Doc. 31 at 31, ll. 3–8).

Plaintiff claims the SLU speech policy violates his First Amendment rights on a number of grounds. (Rec. Doc. 1 at 14-16). Specifically, Plaintiff claims that the two-hour speaking limit per week is restrictive, stating he typically stays four to six hours per day, and also requires next-day follow up dialogue as part of his expression. *Id.* Plaintiff also claims that the seven-day filing requirement eliminates all "spontaneous speech." *Id.* Ultimately, Plaintiff claims the SLU speech policy has a chilling effect and deters free speech, seeking a preliminary and permanent injunction enjoining Defendants from enforcing the policy, actual and/or nominal damages, and attorney fees and expenses pursuant to 42 U.S.C. § 1988. *Id.*

Plaintiff filed a Motion for Preliminary Injunction enjoining the Defendants from enforcing the speech policy on November 4, 2008, stating that: (1) Plaintiff has a substantial likelihood of prevailing on the merits of the action; (2) The alleged violation of Plaintiff's First Amendment rights constitutes "irreparable injury"; (3) The threatened injury to plaintiff caused by the continuation of the policy outweighs the potential injury to SLU posed by the injunction; and (4) Granting the preliminary injunction would serve the public interest. (Rec. Doc. 3).

This Court denied Plaintiff's Motion for Preliminary Injunction at the conclusion of a hearing held on March 3, 2009. (Rec. Docs. 17, 31). Contrary to Plaintiff's contentions, the

Court stated that denying the injunction did not pose a substantial threat of irreparable injury because there were other processes for Plaintiff to express himself under the policy. (Rec. Doc. 31 at 46, ll. 2-24). Additionally, the Court stated the Plaintiff did not show that the threatened injury to the movant outweighs the potential injury that the injunction may cause the opposing party. *Id*. Finally, the Court observed that the public interest is served with a policy such as the speech policy at SLU, which aims to further the university's educational mission, ensure student safety, and foster diversity in speech. *Id.* The Court further directed the parties to proceed with discovery, summary judgment motions, and scheduling for a possible trial on the merits. *Id*.

In response, Plaintiff appealed this Court's denial of the Motion for Preliminary Injunction to the Fifth Circuit and filed the instant Motion to Stay Proceedings pending the Fifth Circuit's ruling. (Rec Docs. 19, 20). Defendants subsequently filed the instant Motion for Judgment on the Pleadings to dismiss Defendants Jim McHodgkins and Thomas Carmichael in their respective official and individual capacities. (Rec. Docs. 18, 26).

*DISCUSSION*

## A. Plaintiff's Motion to Stay Proceedings

### i. Fed. R. Civ. P. 62(c) Standard

Motions to stay proceedings pending an interlocutory appeal under 28 U.S.C. 1292(a)(1) are made pursuant to FED. R. CIV. P. 62(c), which provides, in pertinent part:

> **Injunction Pending an Appeal.** While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights. . .

FED. R. CIV. P. 62(c) provides an exception to the necessity for finality as a condition precedent to appeal. *Gray Line Motor Tours, Inc. v. City of New Orleans*, 498 F.2d 293, 296-98 (5th Cir. 1974). Generally, the district court lacks the authority to alter an injunction pursuant to FED. R. CIV. P. 62(c) once an appeal has been filed except to maintain the "status quo" of the case by securing the rights of the party adversely affected by the district court's decision. *Coastal Corp. v. Texas Eastern Corp.*, 869 F.2d 817, 820 (5th Cir. 1989). The district court's granting of a stay of an equitable order is an extraordinary device which should be granted sparingly. *U.S. v. State of La.*, 815 F.Supp. 947, 948 (E.D. La. 1993). *See also U.S. v. State of Tex.*, 523 F.Supp. 703, 729 (E.D. Tex. 1981) (Stay of equitable order should

be granted sparingly because stay of decisions granting equitable relief pending appeal interrupts ordinary process of judicial review and postpones relief for prevailing party at trial).

The factors the court assesses when considering a motion to stay are substantially similar to those weighed when determining whether to grant a preliminary injunction, and the movant bears the burden of showing the balance of equities weights heavily in favor of granting the stay. *U.S. v. Baylor University Medical Center*, 711 F.2d 38, 39 (5th Cir. 1983). To determine whether to grant a stay, courts must evaluate: (1) whether stay applicant has made strong showing that he is likely to succeed on merits; (2) whether applicant will be irreparably injured absent stay; (3) whether issuance of stay will substantially injure the other parties interest in the proceeding; and (4) whether granting the stay serves the public interest. *Drummond v. Fulton County Dep't of Family and Children's Services,* 532 F.2d 1001, 1002 (5th Cir. 1976).

### ii. Motion to Stay Proceedings

In the Motion to Stay Proceedings, Plaintiff claims that the SLU speech policy violates his First Amendment rights and constitutes "irreparable harm". (Rec. Doc. 21-2) Plaintiff further claims that granting a stay would promote judicial economy by allowing the Fifth Circuit to specifically address the purely legal issues related to the alleged infringement of Plaintiff's First

Amendment rights and provide "valuable guidance" on how to proceed with discovery. *Id.*

In opposition, Defendants stated that SLU speech policy is a reasonable, content-neutral time, place, and manner regulation governing the assemblage of non-student individuals or organizations on campus. (Rec. Doc. 15). Defendants further state that the policy is narrowly tailored to achieve the legitimate purposes of furthering SLU's educational objectives, facilitating the orderly movement of students around campus, and ensuring diversity by providing all parties an opportunity to apply and appear on campus for expressive activities. *Id.*

The four-part inquiry in *Drummond* determining whether the court's granting of a stay is appropriate was previously applied by this Court when determining whether to grant Plaintiff's original Motion for Preliminary Injunction. (Rec. Docs. 17, 31). This Court stated that denying the injunction did not pose a substantial threat of irreparable injury because there were other processes for Plaintiff to express himself under the policy.[2] (Rec. Doc. 31 at 46, ll. 2-24). Although this Court did not express an opinion as to Plaintiff's possibility of success on the merits, the Court did acknowledge other policies similar to the

For example, the Court noted that different individuals within the same group could register for speaking times on consecutive days, and different individuals could register for consecutive time slots on the same day with their own respective applications. (Rec. Doc. 31 at 39-40).

speech policy at SLU have been held to be constitutionally permissible. *Id.* at 41-48. Additionally, this Court stated that at this preliminary stage, the Plaintiff did not show that the threatened injury to the movant outweighed the potential injury that the injunction may cause the opposing party. *Id.* Finally, this Court observed that the public interest is best served with a policy such as the speech policy at SLU, which aims to further the university's educational mission, ensure student safety, and foster diversity in speech. *Id.*

Applying the *Drummond* factors, Plaintiff has not satisfied the criteria warranting a stay of proceedings pending the interlocutory appeal of the denial of the preliminary injunction. (Rec. Doc. 31). This Court has previously ruled that Plaintiff will not suffer "irreparable injury" due to policy because he may still express himself pursuant to the SLU speech policy, and therefore Plaintiff does not satisfy the first element of the *Drummond* inquiry. (Rec. Doc. 31 at 46, ll. 2-24). Additionally, this Court has previously acknowledged the speech policy in question serves the public interest by facilitating educational objectives, and therefore Plaintiff has failed to satisfy the fourth factor of the *Drummond* inquiry. *Id.*

Furthermore, the granting of the motion to stay is granted "sparingly" and would not serve to maintain the "status quo" in this case because numerous universities have similar policies as

the speech policy at SLU. *Coastal*, 869 F.2d at 820; *U.S. v. State of La*, 8145 F.Supp at 948. Plaintiff has not shown that the "balance of equities" weighs heavily in favor of granting the stay. *Baylor*, 711 F.2d at 39. Therefore, Plaintiff's Motion to Stay proceedings is denied. *Coastal*, 869 F.2d at 820.

**B.  Defendants' Motion for Judgment on the Pleadings**

**i. FED. R. CIV. P. 12(c) Standard**

In considering Defendant's Motions for Judgment on the Pleadings, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 125-26 (2d Cir. 2001). The district court will not dismiss the case under FED. R. CIV. P. 12(C) unless it is satisfied that the complaint cannot state any set of facts that would entitle him to relief. *Id.* If a defendant's motion to dismiss for failure to state a claim is filed after the defendant filed an answer, the motion is required to be considered by the district court as a motion for judgment on the pleadings. *Id.* Defendants have filed an answer to the Complaint, and Defendants'

motions, although labeled as the First and Second Motions for Partial Dismissal, should properly be treated as motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). (Rec. Docs. 11, 18, 26).

In the Motion for Judgment on the Pleadings, Defendants claim SLU Interim President John Crain, in his official capacity, is responsible for the enforcement of the speech policy and an injunction may only be sought against him and/or the Board of Supervisors for the University of Louisiana System ("Board"). (Rec. Doc. 18-2). Defendants seek dismissal of Defendants Jim McHodgkins and Officer Thomas Carmichael, claiming these individuals are entitled to qualified immunity and that actions for monetary damages against these Defendants are barred by the Eleventh Amendment.[3] Id. Defendants seek dismissal of Defendant Jim McHodgkins in his personal capacity, claiming that his actions were objectively reasonable and in the course of his official duties, and he is therefore entitled to qualified immunity. (Rec. Doc. 26). Defendants also claim that Defendant Officer Carmichael, in his personal and official capacity, should be dismissed because he is also entitled to qualified immunity and not subject to a claim for monetary damages in federal court. *Id.*

### ii. 42 U.S.C. § 1983 Claims Against a State Actor in his Official Capacity

---

In the First Motion for Partial Dismissal, Defendants mistakenly claim Jim McHodgkins was named solely in his official capacity, and subsequently filed a Second Motion for Partial Dismissal seeking his dismissal in his personal capacity. (Rec. Docs. 18, 26).

The civil rights protection under 42 U.S.C. § 1983 provides a remedy when federal rights are deprived under color of state law, and states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within t h e jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

To state a claim under 42 U.S.C. § 1983 a plaintiff must: (1)allege a violation of a right secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Victoria W. v. Larpenter,* 369 F.3d 475, 482 (5th Cir. 2004). A plaintiff must also identify defendants who were personally involved or whose acts are causally connected to the alleged Constitutional violation. *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir.2005); *citing, Woods v. Edwards,* 51 F.3d 577, 583 (5th Cir.1995).

A state actor is generally immune from actions brought against him in his official capacity under 42 U.S.C. § 1983 by virtue of the Eleventh Amendment because the real party in interest is the state entity. *Kentucky v. Graham*, 473 U.S. 159,

165-66 (1985). However, under the *Ex-Parte Young* exception, a state actor operating in his official capacity is not immune from suit under the Eleventh Amendment when the plaintiff seeks injunctive relief to prevent an on-going violation of federal law. *Ex-Parte Young,* 209 U.S. 123, 158-160 (1908); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (stating that under *Ex parte Young,* a federal court may enjoin state officials to conform their future conduct to the requirements of federal law). A state official in his or her official capacity, when sued for injunctive relief, is a "person" under 42 U.S.C. § 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will v. Michigan Department of State Police,* 491 U.S. 58, 71 (1989)

In order for the *Ex parte Young* exception to Eleventh Amendment immunity to apply, a State official must be acting, threatening to act, or at least have the ability to act to enforce an unconstitutional state act. *Okpalobi v. Foster*, 244 F.3d 405, 421 (5th Cir. 2001). To determine whether state actor has a sufficient relation to the alleged constitutional violation and may be liable under the *Ex parte Young* immunity exception, courts consider: (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers; and (2) the demonstrated willingness of the official to enforce the statute. *Id.* at 416-17.

In Plaintiff's claim under 42 U.S.C. § 1983, Plaintiff has alleged: (1) a violation of his First Amendment rights; (2) that the violation was a result of the speech at SLU, a state university within the University of Louisiana System; and (3) that Defendants John Crain, Jim McHodgkins, and Officer Thomas Carmichael's actions directly resulted in the violation of Plaintiff's constitutional rights. (Rec. Doc. 1).

Applying the factors of *Ex parte Young* Eleventh Amendment immunity exception, Defendants McHodgkins and Carmichael are susceptible to liability in their official capacity for an alleged violation of constitutional rights. With regards to Defendant McHodgkins, the SLU speech policy specifically states that "Any individual(s) or organization may publicly assemble or demonstrate in a peaceful manner after attaining the permission of the Assistant Vice President of Student Affairs or his or her designee." (Rec. Doc. 3-3). Defendant McHodgkins, in his official capacity as the Assistant Vice President of Student Affairs, is specifically enumerated in the speech policy as the official responsible for receiving and approving the speech applications, thereby satisfying the first prong of the *Ex Parte Young* inquiry. *Id.* Defendant McHodgkins also satisfies the second element of the *Ex Parte Young* inquiry by demonstrating a willingness to enforce the policy, as evidenced by his approval of Officer Carmichael's actions and his explanation of the speech policy to Plaintiff.

(Rec. Doc. 1).

Defendant Carmichael, in his official capacity as a SLU Police Officer, also satisfies both elements of the *Ex-Parte Young* exception by: (1) being responsible for the enforcement of university policies by virtue of his position as a police officer; and (2) actually enforcing the speech policy by requesting that Plaintiff cease expressive activities and proceed to Defendant McHodgkins' office to further discuss the situation. (Rec. Doc. 1).

Contrary to Defendant's assertions, the Board is not the proper party for Plaintiff to seek action against in this suit. (Rec. Docs. 18-2, 26-2). The Board, as the governing body for SLU, is an agency of the State of Louisiana and has Eleventh Amendment immunity from suit against it in federal court. *See Rodriguez v. Board of Trustees for State Colleges and Universities,* 1993 WL 484909 (E.D. La. 1993) (SLU, as an institution under the supervision of Board of Trustees for State Colleges and Universities, is arm of the state protected from suit in federal court by Eleventh Amendment); *see also, Laxey v. Louisiana Bd. of Trustees,* 22 F.3d 612 (5th Cir. 1994)(University of Southwestern Louisiana is an institution under the supervision of Board and considered an arm of the state protected from suit in federal court by Eleventh Amendment).

In the present case, Plaintiff seeks prospective injunctive

15

relief from Defendants McHodgkins and Carmichael in their respective official capacities. Both Defendants are responsible for the enforcement of the SLU speech policy and have demonstrated willingness to enforce the policy, and fall within the *Ex parte Young* exception from Eleventh Amendment immunity. Therefore, Defendants' Motions for Partial Judgment dismissing Defendants McHodgkins and Carmichael in their official capacity are denied.

### iii. 42 U.S.C. § 1983 Personal Capacity Claims Against State Actors

A state actor may be entitled to qualified immunity from suit in his personal capacity under 42 U.S.C. § 1983 if the actor's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002). A state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions. *McClendon v. City of Columbia*, 305 F.3d 314, 322-23 (5th Cir. 2002).

For a constitutional right to be clearly established for purposes of qualified immunity, its contours must be sufficiently clear that a reasonable official would understand that what he is

doing violates that right.[4] *Hope v. Pelzer,* 536 U.S. 730, 740 (2002). Once it is clear that a constitutional violation has occurred, courts must examine whether the state of the law at the time gave defendants fair warning that their behavior toward plaintiffs was unlawful to determine whether plaintiffs have overcome defense of qualified immunity. *Williams v. Kaufman County*, 352 F.3d 994, 1005-06 (5th Cir. 2003). Where reasonable public officials could differ on the lawfulness of the official's actions, the official is entitled to qualified immunity. *Johnston v. City of Houston,* 14 F.3d 1056, 1059 (5th Cir. 1994). As a general rule, qualified immunity protects all officials except for those who are "plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Defendants claim that Defendants McHodgkins and Carmichael are entitled to qualified immunity because the First Amendment right to free speech is not "unfettered" and is subject to reasonable time, place, and manner restrictions. (Rec. Docs. 18 2, 26-2). Defendants further claim their actions regulating Plaintiff's speech pursuant to the university policy were objectively reasonable, and seek dismissal of Plaintiff's claim for monetary damages. (Rec. Docs. 18-2, 26-2).

In opposition, Plaintiff asserts that Defendants violated his

---

To the extent parties believe that qualified immunity exists, parties must consider that issue at the appropriate time.

First Amendment right to free speech by: (1) enforcing a content-based "heckler's veto" [5]; and (2) completely banning all of Plaintiff's desired expression. (Rec. Doc. 34). Plaintiff seeks nominal and/or actual damages from Defendants McHodgkins and Carmichael in their personal capacity for the alleged violation of his First Amendment rights. *Id.*

It is clearly established that public universities have the right to promulgate content-neutral time, place, and manner restrictions on free speech that serve a legitimate purpose of facilitating educational objectives. *Widmar v. Vincent*, 454 U.S. 263, 267-271, n.5 (1981). The SLU speech policy explicitly states that it is made pursuant to the First and Fourteenth Amendments to the United States Constitution, does not discriminate on the basis of content, and serves to facilitate the academic programs and administrative processes of the university. (Rec. Doc. 3-3).

Defendant McHodgkins and Carmichaels are entitled to qualified immunity from suit in their personal capacities under 42 U.S.C. § 1983 because their action towards Plaintiff were not "plainly incompetent" and Defendants did not "knowingly violate the law." Malley, 475 U.S. at 341. Although there is no Fifth Circuit case precisely on point, this Court discussed the Eight Circuit's

---

Defendant's define a heckler's veto as an impermissible content-based speech restriction where the speaker is silenced due to an anticipated disorderly or violent reaction from the audience. *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1158-59 (9th Cir. 1974).

decision in *Bowman v. White*, 444 F.3d 967 (8th Cir. 2006), in the hearing for Plaintiff's Motion for Preliminary Injunction as a case with a substantially similar university speech policy. (Rec. Doc. 31 at 41-48). In *Bowman*, the Eight Circuit held that the university policy requiring a permit and a three-day notice requirement for non-university speech activities was constitutional. 444 F.3d at 980-81 (8th Cir. 2006) The present case will turn on the "seven day notice requirement and in terms of whether or not it's violative of free speech guarantees." (Rec. Doc. 41 at 44, 11. 8-12). Unless violative of clearly established law, education officials have discretionary authority to promote learning development in an environment conducive to same. Courts generally defer to their lawful decisions made, as here, in good faith. *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075 (5th Cir. 1995); *Bowman*, *supra*.


Defendant Officer Carmichael approached Plaintiff and the three-to-four other individuals gathered and informed them that the SLU speech policy enumerates specific areas for non-university organizations to conduct speech activities. (Rec. Doc. 1). Defendant Carmichael requested their identification, informed them that they must submit an application to Defendant McHodgkins to conduct speech activities, and stated that Plaintiff could not conduct a "demonstration" on campus grounds without written

permission.

*Id.* Defendant Carmichael then proceeded to accompany Plaintiff to Defendant McHodgkins' office for a further discussion of the speech policy. Defendant Carmichael's actions were objectively reasonable in light of the fact he was acting pursuant to a university policy considering that "the official's knowledge of the relevant law need not rise to the level of a constitutional scholar" for him to be entitled to qualified immunity from suit under 42 U.S.C. § 1983. *Landesberg-Boyle v. State of La.*, 2004 WL 2035003 (E.D. La. 2004).

During his meeting with Plaintiff, Defendant McHodgkins informed Plaintiff of the speech policy and explained that he would not be able to obtain permission to speak on campus that day. (Rec. Doc. 1). There is no evidence Defendant McHodgkins barred Plaintiff from applying for permission to speak on campus or otherwise hindered his expression. Defendant McHodgkins' is entitled to qualified immunity from suit in his personal capacity under 42 U.S.C. 1983 because his meeting with the Plaintiff and explanation of the policy was not "plainly incompetent" and his actions did not "knowingly violate existing law". *Malley*, 475 U.S. at 341. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Stay Proceedings is **DENIED**, Defendant's Motion for Judgment on the Pleadings to dismiss

Defendants McHodgkins and Carmichael in their official capacity is **DENIED**, and Defendant's Motion for Judgment on the Pleadings to dismiss Defendants McHodgkins and Carmichael in their personal capacities is **GRANTED**.

New Orleans, Louisiana, this 30th day of July, 2009.

IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE