```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA

JEREMY SONNIER                         *    CIVIL ACTION
                                       *
VERSUS                                 *    NO. 08-4800
                                       *
DR. JOHN CRAIN, ET AL                  *    SECTION "B"(4)
```

## ORDER AND REASONS

Before the Court are Plaintiff Sonnier and Defendants Dr. John Crain, Jim McHodgkins and Thomas Carmichael's cross motions for summary judgment. First, is Plaintiff's Motion for Summary Judgment and responsive pleading (Rec. Doc. Nos. 62 and 69). In response, Defendants' filed their Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Rec. Doc. No. 65). Subsequently, Defendants' filed their Motion for Summary Judgment and Motion for Dismissal and responsive pleading (Rec. Doc. Nos. 63 and 70). In turn, Plaintiff filed his Response Memorandum in Opposition to Defendants' Motion for Summary Judgment/Motion to Dismiss (Rec. Doc. No. 66).

Accordingly, and for the reasons pronounced below, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Rec. Doc. No. 62) and Defendants' Motion for Summary Judgment/Motion for Dismissal (Rec. Doc. No. 63) **are DENIED**.

Cause of Action and Facts of the Case:

1

The facts of this case are well known to the Court (Plaintiff filed a 42 U.S.C. §§ 1983 and 1988 action against Dr. John Crain, in his official capacity as Interim President of Southeastern Louisiana University ("SLU"), Jim McHodgkins, individually and in his official capacity as Assistant Vice President for Student Affairs of SLU, and Thomas Carmichael, individually and in his official capacity as a SLU police officer for allegedly violating Plaintiff's First Amendment rights), and are adopted and incorporated by reference.  (*See* Rec. Doc. No. 41).

## Law and Analysis

a. Motion for Reconsideration Regarding Qualified Immunity

It is well recognized that reconsideration is an "extraordinary remedy which should be used sparingly." *A.M.C. Liftboats, Inc. Apache Corp.*, 2008 WL 1988807 (E.D.La. 2008) (quotation marks omitted).  A Federal Rule of Civil Procedure Rule 59(e) motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.  *Templet v. HydrocChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).   There are four grounds upon which a motion to reconsider can be granted: "(1) to correct manifest errors of law or fact upon which judgment is based; (2) the availability of new evidence; (3) the need to prevent manifest

injustice; or (4) an intervening change in controlling law." *Peterson v. Cigna Group Ins.*, 2002 WL 1268404 (E.D. La June 5, 2002). Furthermore, the Fifth Circuit has held that a court may only grant a motion for reconsideration on the basis of newly acquired evidence if "(1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 696-97 (5th Cir. 2003).

   Here, Sonnier requests the Court to reconsider its decision to dismiss Defendants McHodgkins and Carmichael from the case in their individual capacities and to award nominal damages against them because neither of them "deserve qualified immunity." (Rec. Doc. No. 62-17, at 22). Specifically, Sonnier contends that "[i]t is now apparent that officials McHodgkins and Carmichael applied a blatantly unconstitutional policy against Sonnier to prevent his expression on November 19, 2007." (Id.).

   Sonnier fails to provide any "newly discovered" evidence that would warrant this Court reconsidering its prior ruling regarding qualified immunity for Defendants McHodgkins and Carmichael. *Infusion Res., Inc.*, 351 F.3d at 696-97. Yet, according to Defendants' Motion for Summary Judgment and Motion for Dismissal,

Rec. Doc. No. 63-1 at 6, Defendant Carmichael "is retired from the police force and therefore has no role in enforcement or notice on any enjoinment of same." (Rec. Doc. No. 63-1 at 6). Assuming Defendant Carmichael, is, in fact, retired, Sonnier's request for reconsideration regarding Officer Carmichael is rendered moot. Furthermore, regarding Defendant McHodgkins, Sonnier fails to demonstrate any new evidence or facts proving why said Defendant does not deserve qualified immunity. *See Infusion Res., Inc.*, 351 F.3d at 696-97

b. Permanent Injunctive Relief

It is well established that prospective injunctive relief should only be granted in order to prevent an ongoing violation of federal law. *See Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).

Here, in analyzing the entire speech policy, the Fifth Circuit invalidated one of the provisions on its face, the fee provision. (*See* Rec. Doc. No. 58).  Thus, leaving the remaining provisions intact.  Sonnier has failed to demonstrate why the remaining speech policy provisions should be permanently enjoined as-applied, at this time.  Outside of mere argument, Sonnier has not demonstrated how the current speech policy will facilitate an ongoing violation of federal law.  *See Flint*, 488 F.3d at 825.  In adopting the time, place and manner analysis below, the Court recognizes that a

4

permanent injunction of the speech policy at issue should not be issued at this time.

c. Motion for Summary Judgment

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id*. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

**Free Speech Analysis**

As an initial matter, the Court recognizes that this matter is not ripe for summary judgment because Defendants contend that they have not been given access to a video transcript to a video pertinent to this case. (Rec. Doc. No. 63-1, at 4). Defendants maintain that they have requested said transcript, which will aid them in furthering their discovery process, but to no avail. (Id. at n. 17).

Moreover, the Court recognizes the instant matter is not currently appropriate for summary judgment for the following reasons. First, this Court determined the speech policy was a content-neutral policy. Content-neutral time, place and manner restrictions are analyzed under intermediate scrutiny. *See Turner Broad Sys. v. FCC*, 520 U.S. 180, 213-14 (1997). Therefore, they are permissible, as long as they are narrowly tailored to serve a significant government interest and leave open ample alternative channels for communication of information. *Id*. Thusly, here, the only remaining questions are: 1) whether the speech policy is narrowly tailored to meet a significant government interest? and 2) whether there are ample alternative channels?

Second, federal courts have long recognized that a public university has powers to institute rules and to require generally acceptable standards of conduct. *Esteban v. Central Missouri State College*, 415 F.2d 1077, 1086-87 (8th Cir. 1969). Further, it is

well established that public universities have the right to regulate the time, place and manner in which free speech may occur. *Justice for All v. Faulkner*, 410 F.3d 760, 767-68 (5th Cir. 2005). As such, courts have recognized the unique nature of universities, and that "a university is less able than a city or other entity with police powers to deal with a significant disruption on short notice." *Bowman v. White*, 444 F.3d 967, 982 (8th Cir. 2006). Moreover, a restriction is narrowly tailored when it does not burden substantially more speech than is necessary to further the government's legitimate interest. *Ward v. Rock Against Racism*, 491 U.S. 781 (1989).

Maintaining order and calm on a public university to promote education and to minimize distractions is a significant government interest, and to do so a university has the right to regulate time, place and manner restrictions, noting its unique circumstances. *See Justice for All*, 410 F.3d at 765. Defendants contend that its university police force is limited, that off-duty officers must be paid time and a half when on duty, and that Defendant McHodgkins, or his designees, must be present during any assemblage. (Rec. Doc. No. 65, at 7). Furthermore, Defendants contend that SLU implemented the seven-day advance notice rule to ensure that a diversity of viewpoints may be expressed. (Id.). Accordingly, Defendants submit that because of the aforementioned facts, and other factors noted in their brief, the speech policy is narrowly

drawn. The current speech policy, which applies to non-campus speakers, does contain reasonable time, place and manner restrictions. A speaker may speak for one two-hour period every seven days, in certain areas of campus. The speaker must provide a seven-day advance notice and give identification information so that the university may conduct a background investigation. Even though Sonnier wants to engage in protected speech, the Supreme Court has recognized that "[e]ven protected speech is not equally permissible in all places and at all times." *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 799 (1985).

A university's time, place and manner restrictions need only be reasonable, not perfect. *See Hays County Guardian v. Supple*, 969 F.2d 111, 118 (5th Cir. 1992). ("At a minimum, a regulation cannot be narrowly tailored unless the cost to speech is carefully calculated and the fit between the burden and the state interest is *reasonable*.") (emphasis added). Furthermore, SLU's limited resources, both of a monetary and law enforcement nature, warrant this university's need to monitor non-campus speakers who are using the campus' facilities. Thusly, the need to maintain order and foster a healthy educational environment, the need to judiciously spend limited resources for law enforcement, and the need to diversify the array of speaker viewpoints all serve as significant interests warranting the burden at issue.

Regarding alternative channels, Defendants contend that Sonnier could have spoken in other available avenues, including the University's sidewalks or areas on the perimeter of campus, and that Sonnier could walk and converse with students on campus. (Rec. Doc. No. 65 at 8). In response, Sonnier contends that besides the Presidential Plaza, he desires to speak "on various sidewalks on the perimeter and interior of SLU." (Rec. Doc. No. 66, at 18). Further, he submits that SLU only designates three areas for expression, and this is problematic because "none of the designated areas include the sidewalks where Sonnier wants to speak." (Id.). Currently, it is not clear whether the alternative channels are truly viable alternatives for Sonnier. Here, there is a genuine issue of material fact about the designated areas and the areas that Sonnier contends are restricted from his use. Thusly, summary judgment is inappropriate at this juncture.

New Orleans, Louisiana, this 24th day of February, 2012.

UNITED STATES DISTRICT JUDGE